UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

SEANDERYL CRAWFORD,

                Plaintiff,               Case No. 2:20-cv-256

v.                                      Honorable Janet T. Neff

CITY OF DETROIT et al.,

                Defendants.
_____/

## OPINION

      This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.     Factual allegations

      Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Alger Correctional Facility (LMF) in Munising, Alger County, Michigan. The events about which he complains occurred at that facility and the Macomb Correctional Facility

(MRF) in New Haven, Macomb County, Michigan.  Plaintiff sues the following Defendants:  the City of Detroit; the Detroit Police Department; the MDOC; MDOC Director Heidi E. Washington; Unknown Part(y)(ies) #1 named as Michigan Health Care Delivery System Chief Medical Examiner; Resident Unit Supervisor Stanley J. Kinner; Hearings Officer Szappan; Wardens Catherine Bauman and Unknown Schraeder; Prison Counselors Karen L. Prunick and Unknown Hoover; Assistant Resident Unit Manager Joseph M. Naeyert; Corrections Officers K. Mattson, Unknown Weberg, D. Kurth, Unknown Wineberg, Unknown Getter, Unknown Pekola, D. Robinson, Unknown Beckwith, M. Rankins, Unknown Wilkins, Unknown Goldman, and M. Anderson; Detroit Police Officers Darryl Cross and Jason McDonald; Classification Director Unknown Zellar;; Lieutenants Unknown Martin[1] and Unknown Loman; Psychologist George Wood; Hearings Investigator G. Jack; Grievance Coordinator J. Lancour; Law Librarian P. Supnick; Resident Unit Manager Unknown Hubble; Sergeant Unknown Seymour; Chaplain Unknown Robenault; Food Service Director Unknown Histed; Food Service Supervisor Unknown Seymour; Cook Number 7 Unknown Lester; Attorney General Bill Schuette; Attorneys James B. Schlaff and Yvette M. Barrett; Investigators Amir Smith and Art Wimmer; Police Official Staffney Larkins; Police Lieutenant Thomas Berry; Wayne County Prosecuting Attorney Kym L. Worthy; Storekeeper J. Robinson; Mailroom Supervisor Unknown Steinman; Chief of Police Ella Bully-Cummings; Deputy Police Chief Harold Cureton; Police Commander Craig Swarz; and Unknown Parties #2 named as People of the State of Michigan.

Plaintiff is currently serving prison sentences which resulted from four 2005 offenses of armed robbery and home invasion, as well as from a 2013 offense of delivery of a controlled substance.  *See h*ttps://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber

---

[1] Defendant Martin was terminated from this action on April 19, 2021.

=560561.  In his amended complaint (ECF No. 14), Plaintiff asserts numerous claims relating to his 2005 arrest and prosecution against Defendants City of Detroit, the Detroit Police Department, Police Officers Cross and McDonald, Defense Attorneys Schlaff and Barrett, Investigators Smith and Wimmer, Police Official Larkins, Lieutenant Berry, Wayne County Prosecuting Attorney Kym L. Worthy, Storekeeper J. Robinson, Chief of Police Ella Bully-Cummings, Deputy Chief of Police Harold Cureton, Commander Swartz, Attorney General Bill Schuette, and Unknown Parties #2 People of Michigan.  For the reasons set forth below, Plaintiff's claims regarding his arrest and prosecution are properly dismissed.

In addition to challenges to his arrest and conviction, Plaintiff asserts a wide-ranging set of claims under the First, Eighth, and Fourteenth Amendments about the conditions of his current confinement.  These claims relate to Defendants MDOC, MDOC Director Heidi E. Washington, Unknown Party #1 Health Care Delivery System Chief Medical Examiner, Resident Unit Supervisor Kinner, Hearings Officer Szappan, Warden Bauman, Prison Counselors Prunick and Hoover, Assistant Resident Unit Manager Naeyert, Corrections Officers Mattson, Weberg, Kurth, Wineberg, Getter, Pekola, Robinson, Rankins, Wilkins, Goldman, and Anderson, Classification Director Zellar, Lieutenant Loman, Psychologist Wood, Hearings Investigator Jack, Grievance Coordinator Lancour, Law Librarian Supnick, Beckwith, Warden Schraeder, Resident Unit Manager Hubble, Sergeant Seymour, Chaplain Robenault, Food Service Director Histed, Food Service Supervisor Seymour, Cook Number 7 Lester, and Mailroom Supervisor Steinman.

Plaintiff claims that since his incarceration in 2006, he has consistently complained about problems with his feet which resulted from having to wear ill-fitting shoes.  Plaintiff states that health care staff at LMF continue to tell Plaintiff that the MDOC via the Chief Medical Examiner does not provide podiatry care to prisoners.

Plaintiff next alleges that on December 27, 2017, while he was confined at MRF, Defendant Getter wrote a class I misconduct ticket on Plaintiff for substance abuse.  On January 16, 2018, Defendant Szapppan held a hearing and found Plaintiff guilty.  Plaintiff completed an appeal form, had it notarized by Defendant Kinner, and placed it in the mailbox in his housing unit at MRF.  Plaintiff's appeal was never received by the Director's office.  Plaintiff filed grievances relating to the incidents surrounding the misconduct report.  Shortly thereafter, Defendant Kinner filled out a security classification screening form, which designated Plaintiff to be transferred. Plaintiff claims that Defendants Getter, Szappan, and Kinner acted out of a desire to retaliate against him for attempting to appeal his misconduct.

Plaintiff was transferred to LMF in February of 2018.  Upon his arrival, Defendant Naeyeert told Plaintiff that they did not like grievance filers in the Upper Peninsula, and that they had their methods of discouraging this behavior.

On September 21, 2020, Defendant Pekola wrote a misconduct on Plaintiff for smuggling.  Defendant Jack misquoted Plaintiff when he took his statement, but Plaintiff was nonetheless found not guilty and was released from segregation.  Plaintiff states that in retaliation for the not guilty finding, he was removed from his job assignments by Defendants Zellar, Hubble, Prunick, and Wood.

Plaintiff claims that Defendants Mattson, Weberg, Kurth, Pekola, Beckwith, Rankins, Wilkins, Steinman, Goldman, Martin, Sergeant Seymour, and Loman are directly responsible for writing misconducts on him and reviewing the misconduct tickets with bias against Plaintiff.  Plaintiff states that these Defendants have all threatened to have Plaintiff found guilty for writing grievances and helping other prisoners.

Plaintiff alleges that Defendant Lancour violated his rights when he rejected some of Plaintiff's grievances, including a grievance that Plaintiff had filed on Defendant Lancour, causing Plaintiff emotional distress.  Plaintiff also makes a conclusory assertion that Defendants Bauman, Schraeder, Washington, MDOC, Naeyert, Hubble, Prunick, Histed, Robenault, Food Service Supervisor Seymour, Lester, and Wood caused him emotional distress because of the manner in which they handled his grievances.

Plaintiff contends that Defendants Naeyert, Hubble, Prunick, Lancour, Histed, Robenault, Food Service Supervisor Seymour, Lester, and Wood violated his Eighth Amendment rights by mishandling issues relating to mental health and religious issues.  Plaintiff further states that he has been subjected to cruel and unusual punishment at LMF because of structural inadequacies, which include inadequate cell cleaning supplies, vermin, ventilation and airflow issues, plumbing problems, inadequate lighting, poor sanitation, a lack of safety protocols for fire and other hazards, overcrowding and double celling, and unfair discipline procedures.  However, Plaintiff fails to allege any specific facts regarding this claim.

Plaintiff asserts that Defendant Supnick has impeded his access to the courts by denying Plaintiff access to the law library even when there were no COVID-19 cases at LMF. Defendant Supnick has also refused to provide Plaintiff with copies on some occasions, and refused to reveal first names of LMF employees so Plaintiff could not include them in his complaints.

Plaintiff claims that MDOC Defendants violated his rights under the First, Eighth, and Fourteenth Amendments.  Plaintiff seeks compensatory and punitive damages, as well as injunctive relief.

II.     **Failure to state a claim**

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

III.    **Claims regarding surrounding Plaintiff's arrest, prosecution, and conviction**

Plaintiff claims that his 2005 arrest was unlawful, and that Detroit police entered his home and arrested him without a warrant or probable cause.  Plaintiff contends that he did not agree to be part of a photo line-up, during which he was represented by Defendant Barrett, and that his appointed counsel, Defendant Schlaff, was ineffective.  Plaintiff makes a conclusory assertion that his prosecution and conviction violated his rights under the First, Fourth, Fifth, Sixth, Eighth, Thirteenth, and Fourteenth Amendments.

Plaintiff makes conclusory assertions regarding the validity of his 2006 state court prosecution and convictions.  As noted above, Plaintiff is currently serving prison sentences which resulted from four 2005 offenses of armed robbery and home invasion, as well as from a 2013 offense of delivery of a controlled substance, s*ee* https://mdocweb.state.mi.us/OTIS2/otis2 profile.aspx?mdocNumber=560561.  Therefore, his claims regarding his state court prosecution and convictions against Defendants City of Detroit, the Detroit Police Department, Police Officers Cross and McDonald, Defense Attorneys Schlaff and Barrett, Investigators Smith and Wimmer, Police Official Larkins, Lieutenant Berry, Wayne County Prosecuting Attorney Kym L. Worthy, Storekeeper J. Robinson, Chief of Police Ella Bully-Cummings, Deputy Chief of Police Harold Cureton, Commander Swartz, Attorney General Bill Schuette, and Unknown Parties #2 People of Michigan constitute a challenge to the fact or duration of his confinement.

A challenge to the fact or duration of confinement should be brought as a petition for habeas corpus and is not the proper subject of a civil rights action brought pursuant to § 1983.  *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) (the essence of habeas corpus is an attack by a person in custody upon the legality of that custody and the traditional function of the writ is to

7

secure release from illegal custody).  As a result, to the extent that Plaintiff's complaint challenges the fact or duration of his incarceration, it must be dismissed.  *See Adams v. Morris*, 90 F. App'x 856, 858 (6th Cir. 2004) (dismissal is appropriate where § 1983 action seeks equitable relief and challenges fact or duration of confinement); *see also Moore v. Pemberton*, 110 F.3d 22, 23–24 (7th Cir. 1997) (reasons for not construing a § 1983 action as one seeking habeas relief include (1) potential application of *Heck v. Humphrey*, 512 U.S. 477 (1994), (2) differing defendants, (3) differing standards of § 1915(a)(3) and § 2253(c), (4) differing fee requirements, (5) potential application of second or successive petition doctrine or three-strikes rules of § 1915(g)).

Moreover, to the extent Plaintiff seeks injunctive, declaratory, and monetary relief for alleged violations of Constitutional rights related to his prosecution and convictions, his claim is barred by *Heck*, 512 U.S. at 486–87, which held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid*, a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]."  *See Edwards v. Balisok*, 520 U.S. 641, 646 (1997) (emphasis in original).  In *Heck*, the Supreme Court held that a state prisoner cannot make a cognizable claim under § 1983 for an allegedly unconstitutional conviction or for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless a prisoner shows that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus."  512 U.S. at 486–87 (footnote omitted).  The holding in *Heck* has been extended to actions seeking injunctive or declaratory relief.  *See Edwards*, 520 U.S. at 646–48 (declaratory relief); *Clarke v. Stalder*, 154 F.3d 186, 189–90 (5th Cir. 1998) (claim for injunctive relief intertwined with request for damages); *Wilson v.*

*Kinkela*, No. 97-4035, 1998 WL 246401, at *1 (6th Cir. May 5, 1998) (injunctive relief).  As noted

above, Plaintiff's allegations clearly call into question the validity of his conviction and

imprisonment.   Therefore, those allegations would be barred under *Heck* until his criminal

conviction has been invalidated.

In addition, as noted above, Plaintiff also alleges that Detroit police forcibly entered

his home without a warrant, which is an unreasonable search under the Fourth Amendment unless

a specific exception (*e.g.*, exigent circumstances) applies.  In *Heck*, the Court suggested that an

illegal search claim under the Fourth Amendment *could* impugn the validity of a conviction, but

described circumstances when that would *not* be the case:

> [A] suit for damages attributable to an allegedly unreasonable search may lie even
> if the challenged search produced evidence that was introduced in a state criminal
> trial resulting in the § 1983 plaintiff's still-outstanding conviction.  Because of
> doctrines like independent source and inevitable discovery, . . . and especially
> harmless error, . . . such a § 1983 action, even if successful, would not *necessarily*
> imply that the plaintiff's conviction was unlawful.   In order to recover
> compensatory damages, however, the § 1983 plaintiff must prove not only that the
> search was unlawful, but that it caused him actual, compensable injury,  . . . which,
> we hold today, does not encompass the "injury" of being convicted and imprisoned
> (until his conviction has been overturned).

*Heck*, 512 U.S. at 487 n.7 (citations omitted).

Plaintiff does not indicate whether the allegedly unlawful entry into his home

caused actual compensable injury other than his eventual convictions.   Thus, at this stage of the

proceedings, it is unclear whether Plaintiff's forcible-entry claim would imply that his conviction

is invalid.  *Cf. Cummings v. City of Akron*, 418 F.3d 676, 683–84 (6th Cir. 2005) (allowing a

forcible-entry claim to proceed).   However, even assuming this claim is not barred by *Heck*, it is

barred by the statute of limitations.

State statutes of limitations and tolling principles apply to determine the timeliness

of claims asserted under 42 U.S.C. § 1983.  *Wilson v. Garcia*, 471 U.S. 261, 268–69 (1985).  For

civil rights suits filed in Michigan under § 1983, the statute of limitations is three years.  *See* Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999).  Accrual of the claim for relief, however, is a question of federal law.  *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984).  The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action.  *Collyer*, 98 F.3d at 220.[2]

Plaintiff asserts that the 2005 entry into his home violated his Fourth Amendment rights.  Plaintiff had reason to know of the "harms" done to him at the time they occurred.  Hence, his claims accrued in 2005.  However, he did not file his complaint until December 28, 2020, well past Michigan's three-year limit.  Moreover, Michigan law no longer tolls the running of the statute of limitations when a plaintiff is incarcerated.  *See* Mich. Comp. Laws § 600.5851(9).  Further, it is well established that ignorance of the law does not warrant equitable tolling of a statute of limitations.  *See Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991); *Jones v. Gen. Motors Corp.*, 939 F.2d 380, 385 (6th Cir. 1991); *Mason v. Dep't of Justice*, No. 01-5701, 2002 WL 1334756, at *2 (6th Cir. June 17, 2002).

A claim barred by the statute of limitations is subject to dismissal for failure to state a claim.  *See Jones v. Bock*, 549 U.S. 199, 215 (2007) ("If the allegations, for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for

---

[2] 28 U.S.C. § 1658 created a "catch-all" limitations period of four years for civil actions arising under federal statutes enacted after December 1, 1990.  The Supreme Court's decision in *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004), which applied this federal four-year limitations period to a suit alleging racial discrimination under § 1981 does not apply to prisoner claims under 42 U.S.C. §1983 because, while § 1983 was amended in 1996, prisoner civil rights actions under § 1983 were not "made possible" by the amended statute.  *Id.* at 382.

failure to state a claim . . . ."); *see also Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017) (holding that if, on the face of a complaint, the allegations show that relief is barred by an affirmative defense (lack of exhaustion), the complaint is subject to dismissal for failure to state a claim) (citing *Jones*, 549 U.S. at 215); *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012) (when a complaint on its face is barred by the statute of limitations, it fails to state a claim). Therefore, Plaintiff's Fourth Amendment unlawful entry claim is barred by the statute of limitations.

For these reasons, the Court will dismiss for failure to state a claim Plaintiff's complaint against Defendants City of Detroit, the Detroit Police Department, Police Officers Cross and McDonald, Defense Attorneys Schlaff and Barrett, Investigators Smith and Wimmer, Police Official Larkins, Lieutenant Berry, Wayne County Prosecuting Attorney Kym L. Worthy, Storekeeper J. Robinson, Chief of Police Ella Bully-Cummings, Deputy Chief of Police Harold Cureton, Commander Swartz, Attorney General Bill Schuette, and Unknown Parties #2 People of Michigan.

## IV.    **MDOC as Defendant**

Plaintiff may not maintain a § 1983 action against the MDOC.  Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994).  Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court.  *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).  In numerous opinions, the Sixth Circuit has specifically held that the MDOC

11

is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See*, *e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010). In addition, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d at 771. Therefore, the Court dismisses the MDOC from this action.

## V.    **Hearing Officer Szappan**

Defendant Szappan is a hearing officer whose duties are set forth at Mich. Comp. Laws § 791.251 through § 791.255. Hearing officers are required to be attorneys and are under the direction and supervision of a special hearing division in the Michigan Department of Corrections. *See* Mich. Comp. Laws § 791.251(e)(6). Their adjudicatory functions are set out in the statute, and their decisions must be in writing and must include findings of facts and, where appropriate, the sanction imposed. *See* Mich. Comp. Laws § 791.252(k). There are provisions for rehearings, *see* Mich. Comp. Laws § 791.254, as well as for judicial review in the Michigan courts. *See* Mich. Comp. Laws § 791.255(2). Accordingly, the Sixth Circuit has held that Michigan hearing officers are professionals in the nature of administrative law judges. *See Shelly v. Johnson*, 849 F.2d 228, 230 (6th Cir. 1988). As such, they are entitled to absolute judicial immunity from inmates' § 1983 suits for actions taken in their capacities as hearing officers. *Id.*; *and see Barber v. Overton*, 496 F.3d 449, 452 (6th Cir. 2007); *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007); *cf. Pierson v. Ray*, 386 U.S. 547, 554–55 (1967) (judicial immunity applies to actions under § 1983 to recover for alleged deprivation of civil rights). Therefore, Defendant Szappan is entitled to dismissal from this action.

VI.     **Respondeat Superior**

Plaintiff fails to make specific factual allegations against Defendants Bauman, Schraeder, and Washington, other than his claim that they failed to conduct an investigation in response to his grievances.  Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability.  *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).  A claimed constitutional violation must be based upon active unconstitutional behavior.  *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act.  *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).  Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance.  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  Plaintiff has failed to allege that Defendants Bauman, Schraeder, and Washington engaged in any active unconstitutional behavior.  Accordingly, he fails to state a claim against them.

VII.    **MRF Claims**

As noted above, Plaintiff claims that Defendants Getter and Kinner retaliated against him for attempting to appeal his December 27, 2017, class I misconduct ticket for substance abuse.  Plaintiff alleges that Defendant Getter wrote the misconduct ticket and Defendant Kinner notarized the appeal form.  Plaintiff states that his appeal was never received by the Director's Office and implies that Defendant Kinner was somehow responsible.  Plaintiff filed grievances

13

relating to the incidents surrounding the misconduct report.  Shortly thereafter, Defendant Kinner filled out a security classification screening form, which designated Plaintiff to be transferred.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Id.*  Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights.  *Thaddeus-X*, 175 F.3d at 396.  The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted.  The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence.  *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).

With regard to Defendant Getter, Plaintiff fails to explain how Getter could have retaliated against Plaintiff for attempting to appeal the misconduct ticket, when the only conduct alleged was that Defendant Getter wrote the misconduct ticket.  Therefore, Plaintiff's retaliation claim against Defendant Getter is properly dismissed.

Plaintiff asserts that Defendant Kinner was somehow responsible for his appeal never being received by the Director's Office.  However, this assumption appears to be entirely speculative.  In addition, Plaintiff's claim that Defendant Kinner's conduct in filling out a security classification screening form was motivated by a desire to retaliate against him is wholly conclusory.

Temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'"  *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)).  However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive."  *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).  Moreover,

> . . . *Muhammad* does not stand for the proposition that temporal proximity alone is sufficient to create an issue of fact as to retaliatory motive.  In *Muhammad* the Sixth Circuit did not resolve the issue, but merely observed that "temporal proximity alone **may be** 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'"  *Id.* at 418 (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004) (emphasis added).  Even if temporal proximity may in some cases create an issue of fact as to retaliatory motive, it would only be sufficient if the evidence was "significant enough."  Plaintiff's conclusory and ambiguous evidence is not "significant enough" to create an issue of fact as to retaliatory motive.

*Brandon v. Bergh*, No. 2:08-cv-152, 2010 WL 188731, at *1 (W.D. Mich. Jan. 16, 2010).  In this case, Defendant Kinner's conduct in filling out a security classification screening form was likely prompted by the fact that Plaintiff had been found guilty of a class I misconduct ticket.  Plaintiff fails to allege any facts showing that Defendant Kinner was motivated by a desire to retaliate against Plaintiff for filing an appeal form.  Accordingly, for the reasons stated above, Plaintiff's retaliation claims against Defendants Getter and Kinner are properly dismissed.

VIII.   **LMF Claims**

      a.   <u>No right to file a grievance</u>

      Plaintiff claims that Defendant Lancour rejected several of his grievances, including one that Plaintiff filed on Defendant Lancour himself.  Plaintiff also claims that Defendants Naeyert, Hubble, Prunick, Histed, Robenault, Food Service Supervisor Seymour, Lester, and Wood caused him emotional distress because of the manner in which they handled his grievances.  Plaintiff has no due process right to file a prison grievance.  The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure.  *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases).  Michigan law does not create a liberty interest in the grievance procedure.  *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).  Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

      Moreover, the manner in which Defendants Lancour, Naeyert, Hubble, Prunick, Lancour, Histed, Robenault, Food Service Supervisor Seymour, Lester, and Wood handled Plaintiff's grievances have not barred Plaintiff from seeking a remedy for his grievances.  *See Cruz v. Beto*, 405 U.S. 319, 321 (1972).  "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact."  *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v.*

*N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)).  Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process.  *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982).  Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977).  The exhaustion requirement only mandates exhaustion of *available* administrative remedies.  *See* 42 U.S.C. § 1997e(a).  If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action.  *See Ross v. Blake*, 136 S. Ct. 1850, 1858–59 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001).

Finally, Plaintiff's assertion that the handling of his grievances by Defendants Lancour, Naeyert, Hubble, Prunick, Lancour, Histed, Robenault, Food Service Supervisor Seymour, Lester, and Wood violated the Eighth Amendment lacks merit because such conduct does not constitute the denial of the "minimal civilized measure of life's necessities."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998).

b.  September 21, 2020, misconduct ticket

Plaintiff alleges that Defendant Pekola wrote a class I misconduct ticket on him for smuggling on September 21, 2020.  At the time, Plaintiff had two prison jobs as an aide.  Plaintiff

17

was placed in administrative segregation pending the hearing.  Defendant Jack was the hearings investigator and misquoted Plaintiff when taking his statement.  At the hearing on September 25, 2020, Plaintiff was found not guilty and was released from administrative segregation.  However, Defendants Zellar, Hoover, Hubble, Prunick, and Wood, who were all members of the prisoner observation aide committee, removed Plaintiff from his job assignments.

Plaintiff claims that he was wrongfully terminated from his prison job without due process.  The Sixth Circuit consistently has found that prisoners have no constitutionally protected liberty interest in prison employment under the Fourteenth Amendment.  *See, e.g.*, *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (district court properly dismissed as frivolous the plaintiff's claim that he was fired from his prison job); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutionally protected liberty or property interest in prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job.").  Moreover, "as the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates."  *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991), and *James v. Quinlan*, 866 F.2d 627, 629–30 (3d Cir. 1989)); *see also Davidson v. Fed. Bureau of Prisons*, No. 17-5429, 2017 WL 8897005, at *3 (6th Cir. Nov. 29, 2017) (citing *Carter*, 69 F. App'x at 680). Under these authorities, Plaintiff fails to state a due process claim arising from the termination of his prison employment.

Plaintiff also states the he "feels" that the loss of his jobs was in retaliation for the "not guilty" finding.  (ECF No. 14, PageID.484.)  To the extent that Plaintiff is attempting to assert a retaliation claim, he fails to allege that he engaged in any protected conduct.  "[T]he Court notes that being found "not guilty" of a misconduct ticket is not actually "conduct" on the part of

Plaintiff; it therefore most certainly cannot be deemed protected conduct." *Onumonu v. Mich. Dep't of Corr.*, No. 1:21-CV-33, 2021 WL 972809, at *4 (W.D. Mich. Mar. 16, 2021).  Moreover, Plaintiff fails to allege any facts showing that Defendants Zellar, Hoover, Hubble, Prunick, and Wood were actually motivated by a desire to retaliate against Plaintiff for being found not guilty. It is far more likely that Plaintiff was terminated from his job assignments despite the not guilty finding because Defendants Zellar, Hoover, Hubble, Prunick, and Wood believed his conduct warranted such an action.  Because Plaintiff's assertion that the loss of his job assignments was retaliatiory is completely conclusory and rests entirely on temporal proximity, this claim is properly dismissed. *Skinner*, 89 F. App'x at 580; *Brandon*, 2010 WL 188731, at *1.

      c.  <u>Other misconduct tickets</u>

Plaintiff makes a conclusory assertion that Defendants Mattson, Weberg, Kurth, Pekola, Beckwith, Rankins, Wilkins, Steinman, Goldman, Martin, Sergeant Seymour, and Loman are directly responsible for the writing and reviewing of misconduct reports and have threatened to find Plaintiff guilty because he has written grievances for himself and other prisoners.  Plaintiff alleges that he has unsuccessfully tried to defend himself with affidavits during misconduct hearings, only to have the affidavit discarded or destroyed.  Plaintiff asserts that the entire hearing process is biased against prisoners.

The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).  Analysis of a procedural due process claim involves two steps:  "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the

procedures attendant upon that deprivation were constitutionally sufficient . . . ."  *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner.  *See Meachum v. Fano*, 427 U.S. 215, 225 (1976).  In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause.  According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin*, 515 U.S. at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).

The Court notes that any misconduct charges and convictions experienced by Plaintiff could potentially affect a number of Plaintiff's interests.  However, Plaintiff has failed to allege any conditions which fall into either of the categories identified in *Sandin* as protected by due process, i.e., an inevitable effect on the duration of Plaintiff's sentence or an atypical and significant hardship.  As to the first category, Plaintiff has not alleged a deprivation that will inevitably affect the duration of his sentence.  A prisoner like Plaintiff, who is serving an indeterminate sentence for an offense committed after 2000, can accumulate "disciplinary time" for a major misconduct conviction.  *See* Mich. Comp. Laws § 800.34.  Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole.  *Id.* § 800.34(2).  It does not necessarily affect the length of a prisoner's sentence because it is "simply

a record that will be presented to the parole board to aid in its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011).

As to the second category, Plaintiff has not alleged that he suffered a "significant and atypical deprivation."  In fact, Plaintiff fails to allege any specific facts regarding the alleged writing and reviewing of misconduct reports by Defendants Mattson, Weberg, Kurth, Pekola, Beckwith, Rankins, Wilkins, Steinman, Goldman, Martin, Sergeant Seymour, and Loman. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions" do not survive review on the dismissal standard." *O'Bryan v. Holy See*, 556 F.3d 361, 376 (6th Cir. 2009) (citation omitted); *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 903 (6th Cir. 2009). Accordingly, Plaintiff's due process claims against Defendants Mattson, Weberg, Kurth, Pekola, Beckwith, Rankins, Wilkins, Steinman, Goldman, Martin, Sergeant Seymour, and Loman are properly dismissed.

To the extent that Plaintiff is asserting that these unspecified misconduct tickets were retaliatory, this claim also fails because it is entirely conclusory.  It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants.  *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim).  Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each

21

alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries"). Because Plaintiff's claims fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"), his retaliation claims are properly dismissed against Defendants Mattson, Weberg, Kurth, Pekola, Beckwith, Rankins, Wilkins, Steinman, Goldman, Martin, Sergeant Seymour, and Loman.

d. Defendant Naeyert

Plaintiff alleges that Defendant Naeyert told him that prison officials in the Upper Peninsula did not like grievance filers and had methods of discouraging this behavior. Plaintiff states that he subsequently received misconduct tickets. However, Plaintiff does not allege that Defendant Naeyert actually wrote any tickets on him. A defendant's statements or conduct are not evidence of retaliation if the defendant is not the decisionmaker taking the alleged adverse action. *Smith*, 250 F.3d at 1038; *Shehee*, 199 F.3d at 301.

e. Eighth Amendment claims

Plaintiff alleges that he has been denied podiatry care by Defendant Unknown Party #1, named as Michigan Health Care Delivery System Chief Medical Examiner, and has problems with his feet as a result of having to wear ill-fitting state-issue shoes. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with

22

contemporary standards of decency.  *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976).  The Eighth

Amendment is violated when a prison official is deliberately indifferent to the serious medical

needs of a prisoner.  *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

Deliberate indifference may be manifested by a doctor's failure to respond to the

medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to

medical care or intentionally interfering with the treatment once prescribed.  Regardless of how

evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action

under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a

subjective component.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  To satisfy the objective

component, the plaintiff must allege that the medical need at issue is sufficiently serious.  *Id.*  In

other words, the inmate must show that he is incarcerated under conditions posing a substantial

risk of serious harm.  *Id.*  The objective component of the adequate medical care test is satisfied

"[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person."

*Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane

Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008).  Obviousness, however, is not strictly limited to what

is detectable to the eye.  Even if the layman cannot see the medical need, a condition may be

obviously medically serious where a layman, if informed of the true medical situation, would deem

the need for medical attention clear.  *See, e.g., Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51

(6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an

"objectively serious need for medical treatment," even though his symptoms appeared to the

medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d

868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical

need, since "any lay person would realize to be serious," even though the condition was not visually obvious).  If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care.  *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000).  Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835.  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.  To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . :  A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

In this case, Plaintiff fails to allege any specific facts regarding the condition of his feet, or the level of knowledge of any specific medical official regarding his need for care.  Therefore, because Plaintiff fails to meet the objective or subjective components of an Eighth Amendment claim with regard to Unknown Party #1, this claim is properly dismissed.

Plaintiff also claims that he has been subjected to cruel and unusual punishment at LMF because of structural inadequacies, including inadequate cell cleaning supplies, vermin, ventilation and airflow issues, plumbing problems, inadequate lighting, poor sanitation, a lack of

24

safety protocols for fire and other hazards, overcrowding and double celling, and unfair discipline procedures.  The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency."  *Rhodes*, 452 U.S. at 345–46.  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain."  *Ivey v.*, 832 F.2d at 954 (quoting *Rhodes*, 452 U.S. at 346).  The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities."  *Rhodes*, 452 U.S. at 347; *see also Wilson*, 148 F.3d at 600–01.  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement."  *Rhodes*, 452 U.S. at 348 (citation omitted).  Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment."  *Ivey*, 832 F.2d at 954.  "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'"  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347).  As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

Plaintiff's claim of cruel and unusual punishment, as is true of so many of Plaintiff's other claims, is entirely conclusory.  Plaintiff fails to allege any specific facts regarding the conditions of his confinement, nor does he allege facts showing which Defendants were responsible for the poor conditions.  Because Plaintiff fails to attribute factual allegations to particular defendants with regard to this claim, it is properly dismissed.  *Twombly*, 550 U.S. at 544; *Gilmore*, 92 F. App'x at 190.

      f.   <u>Defendant Supnick</u>

Plaintiff asserts that Defendant Supnick has impeded his access to the courts by denying Plaintiff access to the law library, refusing to provide Plaintiff with copies on some occasions, and refusing to reveal first names of LMF employees so that Plaintiff could use their full names in his complaints.  It is well established that prisoners have a constitutional right of access to the courts.  *Bounds*, 430 U.S. at 821 (1977).  The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners.  *Id.* at 817.  The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them."  *Id.* at 824–25.  The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts.  *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit.  In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury."  *Lewis*, 518 U.S. at 349; *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000.  In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).  The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims.  The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order

26

> to challenge the conditions of their confinement. Impairment of any other litigating
> capacity is simply one of the incidental (and perfectly constitutional) consequences
> of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X*, 175 F.3d at 391 (6th Cir. 1999). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In this case, Plaintiff fails to allege facts showing that he suffered an actual injury as a result of Defendant Supnick's conduct. Therefore, Plaintiff's access to courts claim against Defendant Supnick is properly dismissed.

IX.    **Request for preliminary injunction**

Plaintiff has filed a proposed order for a preliminary injunction (ECF No. 10). Because Plaintiff's complaint fails to state a claim, his request for a preliminary injunction is denied as moot.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing

fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from

proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g).  If he is barred, he will

be required to pay the $505.00 appellate filing fee in one lump sum.

      This is a dismissal as described by 28 U.S.C. § 1915(g).

      A judgment consistent with this opinion will be entered.


Dated:   July 29, 2021                              /s/ Janet T. Neff
                                     Janet T. Neff
                                     United States District Judge